Upon the whole, I am of opinion that the wife could not have claimed under the will and under the act of 1791, if the former had been duly and effectually executed, so as to have secured to her the rights devised to her.
I am also of opinion that she lias done enough to shew that she intended to accept under tho will, if the same Were valid, for she took and enjoyed the whole estate during her life exactly as the will devised it to her $ and as far as such acceptance can bind liw, it bound her and her representatives,
But the knottiest point remains. The defendants insist very forcibly that her acceptance was founded on a misapprehension of the validity of the will. And as that, has failed with respect to the real estate, she was not bound by it, and may now claim under th® will as to the personal estate, ami under the act of 1791, as to the real.
That this court will correct mistakes and protect parties from the effect of their own errors, especially where no blame is imputable to the widow, for the error was common to all the parties. Thence they insist that the court will let in such of the defendants as are children and heirs of Mrs. Honor .Snelgrovc to claim a third part of the real estate as her property under the law of 1791, whilst she holds tho personal, estate under the will. 1 have examined most of the cases which hare been decided on this subject, with attention, In most of the cases *296 where the wife had two provisions in view, one her dower at law, and the other under her husband’s will, they1 ai’e generally deemed inconsistent with each other by necessary inference, and that therefore she must be put to to her election, and cannot have both. Bridgman’s Digest, Baron and Feme, No. 10. See Amb. 466, Arnold to. Kempstead. Ib. 682. Villareal vs. Lord Galway. Ib. 730, Jones vs. Collier. 1 Bro. C. C. 445, Boynton vs. Boynton. 3 Vez. jr. 249, Straham vs. Sulter. 2 Ib. 572, French vs. Davis.
But even then it is certain that the widow in all cases of election shall be permitted to consider which provision is most toher advantage. 2 Eq. C. abr. Corns vs. Farmer. 1 P. Wms. 147. 1 Vez. 314. 4 Bro. C. C. 500. 3 Ves. jr. 887. 5 Vez. jr. 515.
And there are cases where the widow shall not bo precluded by having received one portion if she should afterwards discover that the other is moro beneficia]* 3 Bro. C. C. 255, Wake vs. Wake.
She is compelled however to make her election within a reasonable time, and be bound by it. Dickon’s Reports, 463. Ardesoif vs. Bennett.
In this case a feme covert who was heir at law, took a legacy of 50001, under testator’s will, and she was held to have elected under the will. 3 Bro. C. C. 88, Butricke vs. Bradhurst.
But to come to the cases more immediately applicable to the question before us.
The first case of consequence was that of Noy’s vs-, Mordaunt, decided by Lord Keeper Cowper, in 1706. 2 Vern. 581. In that case a father disposed his estate by will among his children, and gave to one fee simple lands, and to another entailed lands, or under a settlement. The court decreed that it is upon an implied condition, that the child taking the lands in fee simple under the will, should release and acquit to the other whatever rights he had under the settlement.
The same doctrine was supported by Lord Chancellor Talbot, in 1735, in the case of Streatfield vs. Streatfield, Ca. Tem. Talbot, 176. And again by Lord Talbot *297 lu Jenkins vs. Jenkins, which turned on an implied con* dition. 2 Vez. jr. 12, 13.
Until these last cases all the decisions down from Noys vs. Mordaunt bad been cases of devises of real estate alone. Had the rule gone no farther, but been confined to real estate, there would have been no difficulty. But lord Talbot by them decided that where the will comprized both real and personal estate, he would put the party to an election. But in neither of these cases was there any question of defect of the instrument.
Then came the case of Hearl vs. Greenbank, decided by lord Hardwicke in 1749, and was the first case where the difficulty sprung up, in consequence of the will relating both to real and personal estate, but defectively executed, as is the case now under our consideration. 1 Vez. sen. 299, 307. 3 Atk. S. C. 695, 715. In that case, testator devised his land to a person not his heir at law, and a legacy to his heir at law. . The will was not executed according to the statute of frauds, and was therefore void as to the real estate, though good as to the personal. The court decreed the payment of the legacy to the heir at law, without obliging him to give up the land. He did notconsider it a case of election.
Lord Hardwicke noticed the case of Noys vs. Mor-daant,and the subsequent cases and the principle established by them, which he said was right. But he said this case differs from all those j for here the will was void. There was no will as to the land ; and there was no caso which obliged the legatee under such circumstances to - make an election, and give up tine land to get the legacy.
There was no condition expressed on the face of the will that he should not have the legacy unless he gave up the land, and the court would not raise up an implication under such circumstances.
The next case which arose, was that of Boughton andBoughton, decided by lord Hardwicke in 1750. 2 Vez. sen. 12, 13, &c.
In that casé a contingent legacy was given to the heir at law, and the testator devised away lands from *298 the heir to other persons. There was an express cowiition in the will, that if any of the children disputed his will in whole ox* in part, as to the real or pci'sonal estate, ^ie so disputing should forfeit all advantage under, his will. The will was not executed in the presence of three suberibing witnesses according to the statute, and was therefore void as to the real estate, but good as to the personal.
The lord Chancellor examined the subject fully, and was clearly of opinion, that the legatee who was the heir at law, could not take the benefit of this personal legacy, without waiving any rights to the land claimed by descent. He considered this diffei'ent from the case of Hcarl and Greenback, for here is an express clause forbidding the heir to take the legacy unless he complied with the will. He could not get over the express clause. In Hearl and Greenbank, he had refused to raise by implication, a condition (which was not expressed) that the heir should abide by the will in order to get the legacy, when in fact there was no will, at least no well executed will, which could cai’ry the land. B.ut here, there being an express condition annexed to a personal legacy, the court must consider every paid of that, whether relating to real estate or not; you must l’cad the whole will relating to the pci'sonal legacy, let it relate to what it will, which is a substantial difference.
The court decreed, that the heir should he put to her' election, and being an infant and incapable to make the election, the court decreed that the devisee under the imperfect will, should receive the rents and profits of the real estate devised, till the heir at law should come of age and make her election.
Afterwards came the case of Newman vs. Newman, decided by loi’d Thurlow, in 1783, which is very briefly reported in 1 Bro. C. C. 186. In that case the wife was entitled to a settled estate. The husband by his will .gives her an interest in another estate, and all his personal property, in bar of her other claims. But the will was not duly attested to pass real estate. The question was, whether the widow could take the personal estate under *299 the will, together with her other claims, or must elect between them, although the real estate could not pass by the will.
It was decided first by the Master of the Rolls, that she could not take both, but must elect. But he postponed her election till an account could be taken of the personal estate, that she might know: which would be most advantageous to her.
On appeal to. the lord Chancellor, it was argued, that as the testator meant to give her the real as well as personal estate in exchange for her claims $ but as from the imperfect execution of the will, she could not take the whole provision intended for her, she should not be bound to make her election, but should take the legacy and the settled property. Her opponents resisted this and relied on Boughton vs. Boughton. 2 Vez. sen. p. 12, 13. The Chancellor affirmed the Master’s deci’ce, saying that the words extended to all her claims. Though this decree is stated most briefly, it is evident from this last expression of the Chancellor, that the clause of the will declaring that the devises and legacies were in bar of all her claims, was the reason that the widow and legatee was put to her election. And this brings the case of Newman and Newman exactly to that of Boughton vs. Boughton, where lord Hardwicke placed his decree, putting the party to his election, expressly on the ground, of the clause barring the devisee and legatee,, who should not comply with his will.
In 8 Yez. 492,496, this case is stated to have been decided by lord Kenyon, then Master of the Rolls, exactly in conformity to lord Hardwicke’s. decrees in Hearl and Grccnbank, and Boughton vs. Boughton ; lord Kenyon said the doctrine was too firmly settled to be shaken, though he thought the distinction very nice.
And finally the subject again came before, the court in the case" of Sheldon vs. Goodrich, reported in 8 Vez. jr. 481, 496. The lord Chancellor Eldon again decided that no case of election was raised against an heir at law, claiming a legacy under a'will, and areal estate devised away from him by the will, but which was imperfectly *300 executed under tbe statute, unless there was an express condition annexed to the will, the legatee may take the legacy under the will and claim the real estate also. Lord Eldon said he agreed with lord Kenyon, that the dis* tinction (first made by lord Hardwicke) was such as the mind could not well fasten on, but it was better that the law should be certain, than that every judge should speculate upon improvements of it.
1 am of the same opinion, and shall not attempt to improve the law by my speculations, but shall follow the land marks Í have to guide my mind, in a very difficult subject.
Mrs. H. Snelgrove as one of the heirs under'our act of 1791, was not excluded from claiming her proportion of the land, the devise of which was imperfect, by any express words of the will, attached to her acceptance of the personal estate for life, the bequest of which was good.
The supposed acquiescence attributed to Mrs. Snel-grove by her holding the real and personal estate under a mistaken apprehension that the will was valid, will not bind lier. AH the cases say, that an election (even ■where a party is put to an election) made under mistake shall not bind.
In our own court, that point has been decided in the case of the Executors of Munro against Koger and ai. decided in April, 1805, as I have stated above.
The court said that it was by no means inclined to deprive a woman of her legal lights under the idea of her having made her election, merely by abare acquiescence. But it should be made to appear that she was perfectly conusant of her legal rights, and that she had done clear and positive acts, indicating her having made her election.
One objection oilers itself to the mind, which deserves observation.. It has been urged that she has had the full benefit of the will, as to the real as well as to the personal estate, and held both during her life, conforma*-bly to the will. And that her representatives ought not afterwards to be let in to claim her third of the real estate in' fee simple.
*301 To this it is answered that this arose out of the er- ,/or of all parties, and was not a fair election made by her when conusant of her rights. That she did not and could not hold the land under a will, not duly executed, but as an intruder, or under an impression of right.
She could have been ousted of two thirds of the land by the children and heirs of testator at anytime if they had pursued their rights. But they neglected them, andi she and her representatives should not suffer by their neglect j nor will the other parties suffer by this decision 5 for her estate will be liable to the payment of the rents and profits of two thirds of the real estate during the time she held the same impropeidy.
Upon reflection, J believe I have not expressed any opinion, as to another objection made to the claim of «orne of the children to a distributive share of the real estate which is undisposed of by this ill executed will.
Henry Snelgrove, the father, bequeaths in that will. 3s. and no more apiece to several of his children. There are no other words of exclusion in the will.
It was contended that the bequest of 5s. and no more, amounted to an absolute exclusion of these children, so that they could not take a distributive share in any undisposed residuum of their father’s estate, to wit, in the landed estate, which is now divisible among the heirs at law, in consequence of the imperfect execution of the will of the father. That these words “ and no inore,” were a negative upon these children, having any part of the estate of the testator, and would operate upon the real estate as well as the personal, upon what was not actually devised or bequeathed, as upon what was imperfectly devised. The only authority of any importance which I have been able to find directly on this question (but which still does not go the whole length of our case) is that of Vacheli>s. Jeffries, or Breton as it is called in some of the hooks. This case is stated in many of the abridgments, and very imperfectly in most of them. In 11 Viner, p. 194, 5 ; and in 2 Eq, C. abr. 437, it is stated erroneously. In 8 Viner, 345, and 2 Eq. C. abr. 435, it is correct. But it is most fully, clearly and dis* *302 tinctly reported in lBrown’s Pari. Cases, p. 167", under the title of Vachcl and al, vs. Breton, Jeffries and al. It appears that the testator bequeathed legacies to two of his children whom ho owned, and also 5s. apiece, and no more, to two children whom his wife had, after a separation between them, and whom ho calls his wife’s children. Part of his personal estate was undisposed of by the will. Two questions were made as to this surplus ; one as to the right of the executor to the. undisposed surplus, ac.-. cording to the English law. It was decided against the executor. But we have nothing to do with that. The other question was as to the right of the two children, to whom 5s. and no more was bequeathed, to come in for equal shares of this residuum with the other two children of the testator.
The Master of the Rolls decided that this residuum should be distributable among all four of the children, On appeal to the House of Lords, the case was fully argued, and the counsel insisted that the words 5s. and no more were negative, and excluded the two children from any part of the surplus. This was denied, and it was said that as the two other children had specific legacies and plate bequeathed to them and no more, they could only take as being entitled as next of kin to their share of the residuum. The House of Lords reversed the decree of the Court of Chancery, and declared the two children to whom 5s. and no more were bequeathed, should not take any part of the residuum. This case undoubtedly scorns to be an authority for the defendants against the claim of the children of Mr. Snclgrovc, to whom 5s, and no more was bequeathed.
But I am strongly inclined to believe that though little notice is taken in The report of the situation of those two children, whose illegitimacy was so distinctly glanced at by the testator, it had much influence in this decree; otherwise the other two children of acknowledged legitimacy must have been excluded also; for they also had legacies to which the words “ and no more” were attached. Yet they were let into the enjoyment of the residue, to the exclusion of' the other two. But if this *303 case was‘ more decisive than it is, it differs from ours in this essential particular. That 'will was a perfect will,. and the residuum was personal property. In our case the will is imperfect as to real estate, and the residuum in questibn relates to real estate. The words of this will of personal estate (ambiguous at best) cannot operate to debar acknowledged children from their share in the residuum, of real estate, which the law casts upon them.
It is therefore ordered and decreed, that a writ of of partition do issue for dividing the lands of the late Henry Snclgrove, the older into two parts ; one part to Contain a third of the lands, having regard .to quantity and quality, to be set apart as the .share to which the late Honor Snclgrove was entitled under the act of 1791, which shall be allotted to, and held by William Snclgrove, one of the defendants, and such of the children of the late Mrs. Honor Snclgrove, as may not renounce and release their proportions thereof to the said Wm. Snel-grove. And the other two third parts, to be allotted to, and divided among all the children of the late Henry Snclgrove the elder.
And it is further ordered and decreed, that the representatives of the late Mrs. Honor Snclgrove, (being parties to this suit) do account for the rents and profits of two third parts of the landed or real estate of the late Henry Snclgrove, the elder, from the death of the said Henry, until her death. And that they pay over the same to all the children of the late Henry Snclgrove, and their legal representatives, reserving their own proportion.
And that William Snelgrove, the defendant, do account for the rents and profits of one third part of the said real estate, from his mother’s death to this time, and pay over the saíne to the children of Mrs. Honor Snel-grovc and their legal representatives ; reserving his own share. And account for the rents and profits of two third parts of said real estate, from h¡3 mother's death to this time ; and pay over the same to all the children of the said Henry Snclgrove, deceased, and their legal re- *304 preservatives, equally to be divided among them, reserv. ing his own share.
And also that the said W. Snelgrove do pay to the Purc^asers of those parts of the said real estate, which he sold, the amount of the sums paid by them for the same, on their making reconveyances of the same.
Ordered that it be referred to the Master to examine and report upon the accounts of rents and profits.
Costs to be paid out of the. estate.
After the opinion of the court was delivered, the counsel for the defendants requested that an issue should he directed, to be tried by a jury, to ascertain whether the last will and testament of Henry Snelgrove, deceased, was duly executed, according to the statute in such case made and#provided, for the disposition of real estates? whereupon the following order was made:
In this case one of the principal questions which árese, was whether the last will and testament of Henry Snelgrove deceased, was duly executed by the testator i» the presence of three subscribing and credible witnesses, according to the statute; and the defendant’s counsel having applied to the court to direct an issue to he tried at law, I do therefore order and direct that an issue be made up in the usual form, between Henry Snelgrove, one.ofthe complainants, and William Snelgrove, one of the defendants, to try whether the last will of Henry Snelgrove, deceased, hearing date the 14th day of May, 1T98, was duly executed by the testator, in the presence of three subscribing and credible witnesses, according to the statute prescribing the mode of executing last wills and testaments, devising real estates. And that the said issue shall be tried in Lexington district, wherein the land in controversy lies.
Henry W. Desattssuee.
The parties afterwards compromised.